ORIGINAL

# In the United States Court of Federal Claims

No. 15-1399C
Filed: November 16, 2016

FILED
NOV 1 6 2016
U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * * * * * *
                                 *
MARK JOSEPH SACCHETTI and        *
JOHN STEPHEN SACCHETTI           *
                                 *
              Plaintiffs,        *
                                 *
v.                               *
                                 *
UNITED STATES,                   *    Pro Se; Statute of Limitations;
                                 *    Patent Infringement; Trademark;
              Defendant,         *    Substitution of Party After Death.
                                 *
v.                               *
                                 *
CYRACOM INTERNATIONAL, LLC,      *
                                 *
        Third-Party Defendant.   *
                                 *
* * * * * * * * * * * * * * * * *
```

John Stephen Sacchetti, pro se, Lady Lake, Florida.

Mark Joseph Sacchetti, pro se, Los Angeles, California.

**William Joss Nichols**, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington D.C., for defendant. With him was **John J. Fargo**, Director, Intellectual Property Staff, Commercial Litigation Branch, and **Benjamin C. Mizer**, Principal Deputy Assistant Attorney General, Civil Division, Department of Justice, Washington, D.C.

**Randall Steven Papetti**, Lewis and Roca, LLP, Phoenix, Arizona, for third-party defendant CyraCom International, LLC.

## OPINION

HORN, J.

### FINDINGS OF FACT

Pro se plaintiffs John S. Sacchetti and Mark J. Sacchetti filed a complaint in this court in the above-captioned case on November 19, 2015. Plaintiffs begin their complaint by alleging that they are the owners of two patents, design patent number 382,264 (the '264 Patent) and utility patent number 5,604,798 (the '798 Patent), as well as a trademark for the phrase "The You Talk Two Phone," stating that they are the "full and rightful owners

and creators of a unique original invention we named and subsequently had trademarked as '**THE YOU TALK TWO PHONE'®, U.S. PATENT No. DES-382, 264, U.S. UTILITY PATENT No. 5,604,798, U.S. TRADEMARK –SN 74/450292\*\*\***."[1] Plaintiffs then set forth what they allege is a "list of grievances and formal proofs . . . against THE FEDERAL GOVERNMENT OF THE UNITED STATES OF AMERICA, and its various agencies, spanning all three branches, both on and off domestic soil, in addition to all legally bound private or publicly owned corporate entities, subcontractors, or goods and services suppliers." Plaintiffs allege that certain "agendas, programs, and . . . ancillary commerce and operations" of these parties "**compromis[ed] a willful and global infringement of intellectual property's, owned and legally maintained, by Sacchetti, Sacchetti et, al.** !" In particular, plaintiffs allege that the "global manufacturing" of "DUAL-HANDSET TELEPHONES," which "comprise illegal and inferior '*MARKET COPIES' OF 'The You Talk Two Phone*," constituted an "unethical and illegal use of Private **Intellectual Property** Rights" by "*The United States Federal Government,* and awarded subcontractors." Plaintiffs do not include details as to the dates or nature of the alleged infringements of their intellectual property in their complaint, but instead appear to allege that such details are included in letters sent to the President of the United States and the United States Commissioner of Patents, which they attached to their complaint, stating in their complaint:

> [W]ith reference to the three page plea written to the President Of the UNITED STATES, and the formal response to that package being answered in writing along with a Confermation [sic] reference number from THE WHITE HOUSE at the end of the return letter corespondance [sic] by THE COMMISIONER OF PATENTS,-WE PRAY THE U.S.FEDERAL COURT OF CLAIMS HEARS OUR CASE, AND FURTHERMORE, ALLOWS US TO PRESENT OUR PROOFS OF PERSONAL AND PUBLIC RECORD IN ORDER TO ACHIEVE A JUST END.

Plaintiffs conclude their complaint by alleging, without elaboration, that they are entitled to "**$200,000,000**" in damages "**FOR THE USE OF PRIVATE PROPERTY AND WITH RESPECT TO USC 1498a.**"

Attached to plaintiffs' complaint are 195 pages comprising, at least, 130 separate documents. Among these documents are a letter to United States President Barack Obama and a letter from the Office of the Commissioner for Patents at the United States Patent and Trademark Office which appear to be the documents plaintiffs reference in their complaint. The letter to President Obama, dated February 23, 2013 and signed by both plaintiffs, begins:

---

[1] All abbreviations, capitalization and emphasis, as well as any sentence structure, grammatical, and spelling choices, are as they appear in plaintiffs' filings.

> <u>**In 1992, my brother and I invented an electronic telephone for the consumer marketplace that featured two handsets, instead of the usual single handset that one might be accustomed to seeing.**</u> After completing the first successful prototype, we were granted the following U.S. patents:
>
> **["DUAL TELEPHONE BASE"]   U.S.PAT. D-382264**
> **["THE YOU TALK TWO PHONE"] U.S. TRADEMARK FOR THE TITLE**
> **["TELEPHONE SYSTEM WITH AUTOMATIC VOLUME CONTROL]**
> **U.S.PAT. 5,604,798**
> **[{UTILITY- PATENT-(SCHEMATIC DIAGRAM) (THEORY OF OPERATION)]...the** *guts!*

Plaintiffs then state that their letter "constitutes a <u>**citizen's appeal**</u>, **in order to address and correct an enormous, 'multi-agency oversight', on behalf of our Federal Government.**" The February 23, 2013 letter to President Obama continues:

> **Our plea** concerns the infringement of intellectual properties, taken and presently in use by the Federal Government and it's awarded subcontractors, **to aid in the fulfillment of Presidential Mandate #13166, which states that any and all individuals must be provided an interpreter, or, what is referred to as a "remote, over the telephone interpreter"', if said individual has a communications barrier due to a lack of his or her proficiency in spoken English. This extension of The American Disabilities Act, seeks equality and fair access to all ELP (English-Language Proficiency) deficient individuals across the entire range of state and federal governmental services available.**
>
> ***
>
> Since these legally mandated services require the use of a" <u>**DUAL HANDSET TELEPHONE"**</u> at the site of the language "barrier"; and, since our technical utility patent, [TELEPHONE SYSTEM WITH AUTOMATIC VOLUME CONTROL] U.S. PATENT # 5,604,798- (encompasses our unique invention called "THE YOU TALK TWO PHONE"® (U.S. REGISTERED TRADEMARK-(encompasses our original design patent entitled [DUAL TELEPHONE BASE], U.S. Design Patent [D-382264], *first granted back in 1993, then suddenly and mysteriously **MIA** (missing in action), finally resurfacing with different filing data, and no valid accountable filing receipts or explanation from our prosecuting patent attorney!*
>
> <u>**The Mandate, issued on August 11, 2000 by President Clinton, along with some visibly unethical activity on behalf of the U.S.P.T.O., THE UNITED STATES CONGRESS (#***), and negligence from our own**</u>

3

> prosecuting patent attorneys; **(see *9 page essay/analysis; entitled---*** ***["THE YOU TALK TWO PHONE"®])*, are dwarfed** in comparison to the **enormous commerce** carried out by these companies, **(AT&T) (Language-Line LLC), and (Cyra-com *intl./co.//Voiance Inc.*),** to whom the United States Federal Government is in direct and legal partnership with, as well as numerous other third-party start-ups, which have exploded onto the scene since **1995 to the present, 2013, thereby comprising a willfully ignored global and domestic infringement on intellectual property!**
>
> Being that all the above mentioned **corporate entities, as well as the Federal I.P. Court circuit** are not conducive to the independent inventor / patent holder, **all infringing parties to this day,** continue to remain untraceable, unaccountable, and by our definition of justice or fair-play, TOTALLY Unacceptable!!!!!!!!!!!

The letter ends with the following "**Very Humble, Yet Very Warranted Requests**":

> **1). A non-public, executive demand** of fair and just restitution to all offending or infringing parties, who are proven to have engaged in willful and gainful commerce on top of exclusive or legal powers to rightfully control or claim moneys within the laws of rightful term of the private ownership of intellectual property . . . .
>
> **2). An Extension and Reinstitution** of our Patent portfolio . . . .
>
> **3). The reprinting** of our two granted U.S. Patents, as to **reflect the true and factual information**, as these Patents were both **fully maintained, and fully paid for in good faith!**

The letter from the Office of the Commissioner of Patents to plaintiffs is dated July 16, 2013. The letter begins by stating that plaintiffs' February 23, 2013 letter to President Obama had been referred to the United States Patent and Trademark Office (USPTO) for a response and noting that, in their letter, plaintiffs "request (1) 'restitution to all offending or infringing parties,' (2) 'an extension and reinstitution of [your] Patent portfolio,' and (3) 'the reprinting of [your] two granted U.S. Patents, as to reflect the true and factual information.'" (alteration in original). With regard to plaintiffs' first request, the letter states: "the USPTO has no jurisdiction over questions of infringement and the enforcement of patents. Consequently, the USPTO does not have the authority to enforce your demands against the parties that you allege have infringed your patent." With regard to plaintiffs' second request, the letter states: "the USPTO has no authority to lengthen the term of a patent other than 35 USC § 156. . . . The reasons in your letter for requesting an extension of your utility patent's term do not appear to fit the criteria outlined in 35 USC § 156." Regarding plaintiffs' third request, the letter states:

4

A filing receipt enclosed with your letter showed a different filing date than that of your patents. However, the enclosed filing receipt is for application number 07/888,214, and our database indicates that U.S. Patent No. 5,604,798 issued from application number 08/229,206, which is a different application that was filed on April 18, 1994. U.S. Design Patent D382,264 issued from application number 29/046,496 filed on November 16, 1995.

Among the many other documents included with plaintiffs' complaint are three documents related to the intellectual properties apparently at issue in the plaintiffs' complaint and letter to President Obama: the '264 Patent, the '798 Patent, and a trademark for "The You Talk Two Phone." Plaintiffs include a page from the '264 Patent, which states that the patent was for a "DUAL TELEPHONE BASE," was filed November 16, 1996, and was issued August 12, 1997. The only claim listed in the '264 Patent is for an "ornamental design for a dual telephone base, as shown and described" in a description included with the patent. The '264 Patent lists its inventor as Mark J. Sacchetti.

Plaintiffs also include a page from the '798 Patent, which states that the patent was for a "TELEPHONE SYSTEM WITH AUTOMATIC VOLUME CONTROL," was filed April 18, 1994, and was issued February 18, 1997. The abstract contained in the '798 Patent states: "A You Talk Two Phone is provided that is a true two handset telephone device. . . . The You Talk Two Phone contains two handsets and circuitry that automatically adjusts internal amplifier gain to compensate for the extra handset even when not in use." The '798 Patent lists its inventors as John S. and Mark J. Sacchetti.

The only document plaintiffs include related to their alleged trademark is a Notice of Abandonment from the United States Patent and Trademark Office, dated December 5, 1997. The Notice lists the trademark at issue as "THE YOU TALK TWO PHONE" and the applicant as Mark J. Sacchetti. The notice then states:

> THE ABOVE IDENTIFIED TRADEMARK APPLICATION WAS ABANDONED ON 09/18/1997 FOR THE FOLLOWING REASON:
>
> APPLICANT HAS FAILED TO FILE A STATEMENT OF USE WITHIN THE STATUTORY PERIOD. (TRADEMARK RULE 2.65(c)).

Plaintiffs also attach to their complaint several documents related to the three companies mentioned in their letter to President Obama: CyraCom International, LLC; Language Line, LLC; and AT&T, Inc. With regard to CyraCom, plaintiffs provide an undated document that appears to be a press release or advertisement from CyraCom stating: "In 1995 CyraCom's breakthrough patented dual-handset phone technology revolutionized the delivery of Over-the-Phone interpretation." Plaintiffs also include what appears to be press release from CyraCom, dated September 26, 2007, stating that "CyraCom introduced its first patented dual-handset phone in 1995," which, the document states, was "now known as ClearLink(TM)," and that CyraCom had now invented "the industry's first dual-handset cordless phone, ClearLink(TM) Cordless." Plaintiffs also state

5

in a separate motion for assignment of pro bono counsel, discussed below, that, in "the year **2008**,"

> John Sacchetti, now permanently disabled and receiving social security disability insurance, walks into St, Vincent Catholic Hospital in Los Angeles Ca. for a Medicare required colonoscopy,,***and.behold,THE.CYRACOM-BLUE,.DUAL-HANDSET.,SUBSCRIBERLINE..STYLE... TELEPHONE.TWO..OF..THEM..IN A LARGE METROPOLTAN*** [sic] ***HOSPITAL FACILITY!!***

The document states that John Sacchetti "fell over in shock" upon seeing the device. Finally, plaintiffs provide a letter, dated February 24, 2010, from Mark and John Sacchetti to the CEO of CyraCom, listing the full patent numbers for the '264 and '798 Patents and stating, presumably in reference to these patents: "It has come to our attention that your company is utilizing equipment and has been conducting and promoting commerce with said equipment for quite sometime now."

With regards to Language Line, plaintiffs attach to their complaint what appears to be a screenshot from Language Line's website, dated October 26, 2009, announcing a "new telephone with dual handsets for a clear, three-way interpreter conversation." The announcement refers to the device as the "Language Line® Phone."

Regarding AT&T, plaintiffs provide a copy of a letter, dated May 3, 1994, from Mark Sacchetti to AT&T, in which Mark Sacchetti proposed to grant AT&T "exclusive manufacturing rights" to an undisclosed invention of Mark and John Sacchetti that they believed would be "a product comparable to the changing of LP's to the compact disc." Plaintiffs also provide a June 28, 1994 letter from Mark Sacchetti to AT&T's Public Suggestions Analysis Office stating that the letter was "introduc[ing]" AT&T to the Sacchetti brothers' invention, "'The You Talk Two Phone' the world's very first, low-cost, high quality [single-line, dual handset, self-powered] consumer telephone unit." (brackets in original.) The letter included descriptions of the phone's features, a picture of the device, and an offer to make AT&T the plaintiffs' "exclusive business partner in the manufacture and marketing" of the device. Plaintiffs also include AT&T's August 10, 1994 response letter, which stated that the plaintiffs' "submittal does not contain anything novel which would be of value to AT&T." The letter elaborated: "[W]e are familiar with the type of telephone which you have described. However, the results of our most recent market research studies do not indicate a sufficient level of interest in such an offering." An additional letter from Mark Sacchetti to AT&T, dated October 12, 1994, is attached to plaintiffs' complaint, but there is no indication of a further reply from AT&T among the documents attached to the complaint. In addition, without explanation, plaintiffs also provide what appears to be an article from the <u>New York Times</u>, dated March 25, 1999, stating that AT&T had agreed to sell "AT&T Language Line," "its over-the-phone language interpretation service," and that, after the sale, "Language Line will be a preferred supplier of interpretation services for AT&T."

6

Defendant filed an answer to plaintiffs' complaint in which it admitted that USPTO records indicate that plaintiffs were the inventors of the '264 and '798 Patents and that Mark Sacchetti was listed as the "owner of the now-abandoned application for registration of the trademark 'The You Talk Two Phone,'" while denying that "The You Talk Two Phone" is currently a USPTO-registered trademark. Defendant also denied plaintiffs' allegation that the federal government has engaged in illegal use of plaintiffs' intellectual property rights and asserted a defense to plaintiffs' complaint based on lack of subject matter jurisdiction in this court. Defendant then moved the court to provide notice to third parties CyraCom International, LLC, Language Line, LLC, and Legal Interpreting Services (LIS). According to the government, "CyraCom, Language Line, and LIS may be obligated to indemnify the government for any damages awarded to Plaintiffs. These companies have each contracted with the General Services Administration ('GSA') to provide interpretation services." Also, according to the government, the solicitation pursuant to which these third parties contracted with the government contains a patent indemnity clause, and, "[i]n light of Plaintiffs' allegations and the patent indemnity clause . . . the above-identified companies may have an interest in this action within the meaning of RCFC 14(b)(1)."

Third-party defendant CyraCom International, LLC filed a motion to dismiss plaintiffs' complaint, followed by an amended motion to dismiss, seeking to dismiss plaintiffs' complaint for lack of subject matter jurisdiction pursuant to Rule 12(h)(3) (2016) of the Rules of the United States Court of Federal Claims (RCFC), or alternatively, for failure to state a claim pursuant to RCFC 12(b)(6) (2016). Focusing on plaintiffs' allegation in their February 23, 2013 letter to President Obama that the alleged infringement has been taking place "since 1995," as well as the documents attached to plaintiffs' complaint showing that CyraCom began offering dual-handset technology in 1995, CyraCom argues that that the court lacks jurisdiction to hear plaintiffs' patent infringement claims because the alleged infringement took place more than six years prior to filing of the complaint and, therefore, "well over" the six year statute of limitations prescribed by 28 U.S.C. § 2501 (2012). With regard to plaintiffs' trademark infringement claim, CyraCom argues that they should be dismissed because the United States Court of Federal Claims lacks jurisdiction to hear claims for trademark infringement. In the alternative, CyraCom argues plaintiffs' complaint should be dismissed because "Plaintiffs have failed to plead even the basic elements of patent and trademark infringement."

The government also filed a motion to dismiss plaintiffs' complaint for lack of subject-matter jurisdiction pursuant to RCFC 12(h)(3), or, alternatively, for judgment on the pleadings pursuant to RCFC 12(h)(2). In its motion, the government states that it joins the arguments stated in CyraCom's motion to dismiss. According to the government, plaintiffs' patent infringement claims are barred by the statute of limitations prescribed by 28 U.S.C. § 2501, or, in the alternative, plaintiffs have failed to state a claim for patent infringement. The government also indicates that the court lacks jurisdiction over plaintiffs' trademark infringement claim.

In response to the government's motion to dismiss, plaintiffs filed a motion for the assignment of a pro bono counsel. Although the court participates in a pro bono counsel referral program for the appropriate cases filed in this court, the court issued an order informing the plaintiffs that the court considered such a referral as premature prior to a decision on the outstanding jurisdictional motions to dismiss, which raised serious statute of limitations issues. Moreover, in civil cases, the court does not have an obligation to appoint counsel to plaintiffs. See Lassiter v. Dep't of Soc. Servs. of Durham Cnty, N.C., 452 U.S. 18, 26-27 (1981) ("[A]n indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty."); see also Pitts v. Shinseki, 700 F.3d 1279, 1283 (Fed. Cir. 2012), cert. denied, 133 S. Ct. 2856 (2013); Heuss v. United States, 75 Fed. Cl. 636 (2007) (quoting Lariscey v. United States, 861 F.2d 1267, 1270-71 (Fed. Cir. 1988), and noting that the United States Supreme Court has not recognized a right under the Constitution to appointed counsel in civil cases); Martin v. United States, 31 Fed. Cl. 756, 757 (1994) ("The appointment of counsel in a civil case is not a right, but a privilege justified only by exceptional circumstances.").

Also after the filing of the government and CyraCom's motions to dismiss, the government and the plaintiffs filed a joint motion to defer their joint preliminary status report, in which they stated that, "[i]n or around May 2016, Plaintiff Mark Joseph Sacchetti, John Sacchetti's brother, passed away." The court ordered plaintiffs to "file a notice with the court indicating if plaintiffs wish to have Mark Joseph Sacchetti dismissed as a plaintiff from this case or an executor or executrix appointed in his place to continue in the litigation." In response to the court's order, on September 12, 2016, plaintiffs filed what they titled a "**MOTION TO RETAIN THE ESTATE OF MARK JOSEPH SACCHETTI IN LITIGATION OF CASE No. 15-1399C. CURRENTLY IN PROGRESS**," which stated:

> Pursuant to rule 25 (b), (c), of the rules of the U.S.C.F.C., PLAINTIFF JOHN STEPHEN SACCHETTI, submits to this court a formal request to retain the estate of deceased brother MARK JOSEPH SACCHETTI to the current case in progress and do hereby submit along with this formal request, an original death certificate to the clerk of this court as required.

A certificate of death issued by the county of Los Angeles, California for Mark Joseph Sacchetti, dated April 19, 2016, was attached to the motion. The government and third-party defendant CyraCom International, LLC filed responses opposing plaintiffs' motion on the ground that plaintiffs had failed to identify any party to be substituted for Mark Sacchetti.

Rather than respond to these arguments, on October 3, 2016, plaintiffs filed a second "**MOTION TO RETAIN THE ESTATE OF MARK JOSEPH SACCHETTI**," which, after beginning with the same paragraph as contained in the first motion, stated:

> Successor to the deceased party of plaintiff Mark Joseph Sacchetti will be Mr. Dan Logan . . . as sole heir to all interests and worldly assets as bequeathed to Mr. Dan Logan, and by explicit instruction of "*The Last Will*

8

*And Testament"* of the late Mark Joseph Sacchetti, (the living will), vests full and willful joinder, placing his commitment and hence the full scope of all assets and liabilities pertaining specifically to that estate and its relevant legal responsibilities. [sic] in continuing litigation, and as such will replace, and restore, the original 50% / 50% partnership arrangement of plaintiffs parties.

The motion also states that Mr. Logan has been "given the task and title of '*Executor*' of the estate" in Mark Sacchetti's will. Both the government and CyraCom oppose plaintiffs' new motion on the grounds that the motion fails to show Mr. Logan is a "proper party" who may be substituted for the deceased under (RCFC 25(a) (2016)

## DISCUSSION

The court turns first to plaintiffs' "**MOTION[S] TO RETAIN THE ESTATE OF MARK JOSEPH SACCHETTI.**" RCFC 25(a) states: "If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative." For the purpose of RCFC 25(a), "[w]hether a person is a proper party is . . . determined according to state law," and, therefore, "[t]he party seeking substitution must show that the person to be substituted is a proper representative or successor under state law." 6 James William Moore, Moore's Federal Practice § 25.12 (3d ed. 2016) (discussing Federal Rules of Civil Procedure Rule 25(a), which is identical to RCFC 25(a)). Based on the documents provided to the court, the relevant state law for the purposes of plaintiffs' motion to retain is that of California. The address given in plaintiffs' second motion for Mr. Logan indicates that he lives in California, and the purported will of Mark Sacchetti and the address for Mark Sacchetti listed in filings in this court indicate that he resided in California prior to his death. Plaintiffs appear to allege that Mr. Logan is both the representative of Mark Sacchetti's estate and his successor, referring to Mr. Logan in the second "**MOTION TO RETAIN**" as the executor of Mark Sacchetti's estate and his sole heir. Under California law, a person, regardless of whether they are named as an executor in a decedent's will, has no power to administer an estate until the California superior court has appointed the person a personal representative of the estate and "the person appointed is issued letters." See Cal. Prob. Code §§ 8400(a), (b) (West 2016); see also id. § 8405 (specifying the form and contents of appointment letters). Because, in this case, no such letter of appointment, or any other evidence that Mr. Logan has been appointed the personal representative of Mark Sacchetti's estate by a California court, has been provided to this court, at this point, this court cannot find that Mr. Logan is a proper representative of Mark Sacchetti's estate under California law. See Acebal v. United States, 60 Fed. Cl. 551, 557 (2004) (denying RCFC 25(a) motion for widow who was listed as executor in deceased plaintiff's will because widow failed to obtain a letter of administration from state probate court). Similarly, the court cannot find that Mr. Logan is a proper successor to Mark Sacchetti because plaintiffs have failed to provide any evidence that Mark Sacchetti's estate has been fully distributed and, hence, that Mr. Logan is, in fact, legally entitled to the intellectual properties at issue. See Grass Valley

Terrace v. United States, 69 Fed. Cl. 506, 511 (2006) ("Requiring the full distribution of an estate before a distributee may act as a substitute ensures that the distribution is final and not subject to any alterations. In addition, it ensures that the substituted party is in fact legally entitled to the interests at issue."). Given that no showing that Mr. Logan is a proper party under RCFC 25(a) has been presented to the court, the "**MOTION[S] TO RETAIN THE ESTATE OF MARK JOSEPH SACCHETTI**" must be denied.

Turning next to the government and CyraCom's motions to dismiss, the court recognizes that plaintiffs are proceeding pro se, without the assistance of counsel. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524, aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied 135 S. Ct. 1909 (2015). "However, '[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading.'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9 and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

The government and CyraCom have moved to dismiss plaintiffs' complaint for lack of subject matter jurisdiction pursuant to RCFC 12(h)(3). The Tucker Act, 28 U.S.C. § 1491, grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive

10

department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Golden v. United States, 118 Fed. Cl. 764, 768 (2014). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of

11

the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. 392, 400 (1976)); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Peoples v. United States, 87 Fed. Cl. 553, 565–66 (2009).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. at 94 ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Fid. & Guar. Ins. Underwriters, Inc. v. United States, 805 F.3d 1082, 1084 (Fed. Cir. 2015); Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710,

713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2016); Fed. R. Civ. P. 8(a)(1), (2) (2016); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57, 570 (2007)). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)); Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."), aff'd, 460 U.S. 325 (1983). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

When construed liberally, the plaintiffs' complaint appears to allege that AT&T, CyraCom, and Language Line, with and/or working on behalf of the United States Government, infringed two of their patents related to a dual handset phone, the '264 and the '798 Patents, as well as that one or more of these entities infringed their trademark for "The You Talk Two Phone." Although the complaint itself does not name the entities that, along with the federal government, allegedly infringed on plaintiffs' intellectual properties, three companies, "**(AT&T) (Language-Line LLC), and (Cyra-com intl./co.//Voiance Inc.)**," are mentioned in plaintiffs' February 23, 2013 letter to president Obama. In the letter, which was attached as an exhibit to plaintiffs' complaint, plaintiffs appear to allege that these three companies worked in concert with the United States to infringe on plaintiffs' intellectual property, stating that the three companies are in a "direct and legal partnership" with the Federal Government and that the "**enormous commerce carried out by these companies**" constituted a "**a willfully ignored global and domestic infringement on intellectual property!**" Regarding the patent infringement claims, plaintiffs allege that, and include as exhibits to their complaint excerpts from the '264 and the '798 Patents to try to show that, they are the inventors and patent holders of a device they refer to as "The You Talk Two Phone," a telephone that, as described in the '798 Patent, contains "two handsets and circuitry that automatically adjusts internal amplifier gain to compensate for the extra handset even when not in use." In their complaint, plaintiffs appear to allege that these patents have been infringed by the United States and its contractors, stating that the "global manufacturing of" "DUAL-HANDSET TELEPHONES" constitutes an "unethical and illegal use of Private **Intellectual Property** Rights" by "***The United States Federal Government,*** and awarded subcontractors."

13

Although the excerpts provided by plaintiffs from the '264 and the '798 Patents demonstrate that they were issued on February 18, 1997 and August 12, 1997, respectively, plaintiffs allege in their February 23, 2013 letter to President Obama that the patents were actually granted "*in 1993, then suddenly and mysteriously **MIA (missing in action)**.*" Plaintiffs conclude their complaint by seeking damages in the amount of $200,000,000.00 pursuant to "**USC 1498a**," apparently a reference to 28 U.S.C. § 1498(a) (2012), which governs claims for patent and copyright infringement against the United States and its contractors.

The government and CyraCom both argue that plaintiffs' patent infringement claims should be dismissed for lack of jurisdiction because they are barred by the statute of limitations set forth in 28 U.S.C. § 2501. Suits against the United States are subject to a six-year statute of limitations. According to the statute at 28 U.S.C. § 2501:

> Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues. . . . A petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases.

Id. "The six-year statute of limitations set forth in section 2501 is a jurisdictional requirement for a suit in the Court of Federal Claims." John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1354 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2006), aff'd, 552 U.S. 130 (2008). The United States Court of Appeals for the Federal Circuit has indicated that a claim accrues ""'when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'"" San Carlos Apache Tribe v. United States, 639 F.3d 1346, 1358-59 (Fed. Cir.) (quoting Samish Indian Nation v. United States, 419 F.3d 1355, 1369 (Fed. Cir. 2005) (quoting Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003), cert. denied, 540 U.S. 1177 (2004))), reh'g en banc denied (Fed. Cir. 2011); see also FloorPro, Inc. v. United States, 680 F.3d 1377, 1381 (Fed. Cir. 2012); Martinez v. United States, 333 F.3d at 1303 ("A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" (quoting Nager Elec. Co. v. United States, 177 Ct. Cl. 234, 240, 368 F.2d 847, 851 (1966), motion denied, 184 Ct. Cl. 390, 396 F.2d 977 (1968)); Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988); see also Brizuela v. United States, 103 Fed. Cl. 635, 639, aff'd, 492 F. App'x 97 (Fed. Cir. 2012), cert. denied 133 S. Ct. 1645 (2013). A Judge of the United States Court of Federal Claims has noted that:

> It is well-established that a claim accrues under section 2501 "when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc), cert. denied,

14

540 U.S. 1177 (2004) (quoting <u>Nager Elec. Co. v. United States</u>, 368 F.2d 847, 851 (Ct. Cl. 1966)); <u>see also Samish</u>, 419 F.3d at 1369. Because, as noted, this requirement is jurisdictional, plaintiff bears the burden of demonstrating that its claims were timely. <u>See Alder Terrace, Inc. v. United States</u>, 161 F.3d 1372, 1377 (Fed. Cir. 1998); <u>Entines v. United States</u>, 39 Fed. Cl. 673, 678 (1997), aff'd, 185 F.3d 881 (Fed. Cir.), <u>cert. denied</u>, 526 U.S. 1117 (1999); <u>see also John R. Sand & Gravel Co. v. United States</u>, 457 F.3d 1345, 1362 (Fed. Cir. 2006) (Newman, J., dissenting); <u>Reynolds v. Army & Air Force Exch. Serv.</u>, 846 F.2d 746, 748 (Fed. Cir. 1988).

<u>Parkwood Assocs. Ltd. P'ship v. United States</u>, 97 Fed. Cl. 809, 813-14 (2011), <u>aff'd</u>, 465 F. App'x 952 (Fed. Cir. 2012); <u>see also Klamath Tribe Claims Comm. v. United States</u>, 97 Fed. Cl. at 209 (citing <u>Alder Terrace, Inc. v. United States</u>, 161 F.3d 1372, 1377 (Fed. Cir. 1998)). Accrual of a claim is "'determined under an objective standard'" and plaintiff does not have to possess actual knowledge of all the relevant facts in order for a cause of action to accrue. <u>FloorPro, Inc. v. United States</u>, 680 F.3d at 1381 (quoting <u>Fallini v. United States</u>, 56 F.3d 1378, 1380 (Fed. Cir. 1995), <u>cert. denied</u>, 517 U.S. 1243 (1996)).

Although the accrual of a claim pursuant to 28 U.S.C. § 2501 may, in certain limited scenarios, be suspended "until the claimant knew or should have known that the claim existed," <u>Holmes v. United States</u>, 657 F.3d 1303, 1317 (Fed. Cir. 2011) (quoting <u>Young v. United States</u>, 529 F.3d 1380, 1384 (Fed. Cir. 2008)), a plaintiff's alleged "[i]gnorance of rights which should be known is not enough" to suspend the accrual of a claim. <u>Braude v. United States</u>, 218 Ct. Cl. 270, 273, 585 F.2d 1049, 1051 (1978) (quoting <u>Japanese War Notes Claimants Ass'n v. United States</u>, 178 Ct. Cl. 630, 634, 373 F.2d 356, 358-59, <u>cert. denied</u>, 389 U.S. 971 (1967)). Rather, the accrual suspension doctrine is "'strictly and narrowly applied,'" and the accrual date of a cause of action will be suspended in only very limited circumstances: "[the plaintiff] must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." <u>See Martinez v. United States</u>, 333 F.3d at 1319 (quoting <u>Welcker v. United States</u>, 752 F.2d 1577, 1580 (Fed. Cir. 1985)); <u>see also Alliance of Descendants of Tex. Land Grants v. United States</u>, 37 F.3d 1478, 1482 (Fed. Cir. 1994); <u>Catawba Indian Tribe v. United States</u>, 982 F.2d 1564, 1571-72 (Fed. Cir. 1993); <u>Holmes v. United States</u>, 657 F.3d at 1317; <u>Welcker v. United States</u>, 752 F.2d at 1580; <u>Japanese War Notes Claimants Ass'n v. United States</u>, 373 F.2d at 359.

The United States has waived sovereign immunity over patent infringement claims against the federal government and its contractors, and provided the United States Court of Federal Claims with jurisdiction to hear such claims, under 28 U.S.C. § 1498(a). Section 1498(a) states, in relevant part:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the

15

> owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture. . . .
>
> ***
>
> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

28 U.S.C. § 1498(a) (2012); see also Zoltek Corp. v. United States, 672 F.3d 1309, 1312 (Fed. Cir. 2012). "A cause of action under 28 U.S.C. § 1498 accrues 'when the accused [instrumentality] is first available for use.'" Floyd v. United States, 125 Fed. Cl. 183, 189 (2016) (alteration in original) (quoting Unitrac, LLC v. United States, 113 Fed. Cl. 156, 160 (2013), aff'd, 589 F. App'x 990 (Fed. Cir. 2015)).

> Each device, i.e., each individual member of the universe of infringing devices . . . can be taken only once in its lifetime, and if that taking occurs prior to the six-year period which immediately precedes the filing of the lawsuit in the Court of Claims, then recovery as to that particular device is barred forever by 28 U.S.C. § 2501.

Starobin v. United States, 229 Ct. Cl. 67, 71-72, F.2d 747, 749–50 (1981) (footnote omitted).

To be timely, therefore, any cause of action plaintiffs may have for patent infringement must have been filed in this court within six years after the devices that allegedly infringed on plaintiffs' patents, in this case the dual-handset telephones produced by CyraCom and Language Line, were first made available for use. Plaintiffs' complaint was filed on November 19, 2015. Therefore, plaintiffs must be able to show that the allegedly infringing dual-handset telephones were made available no earlier than November 19, 2009, six years before the filing of their complaint on November 19, 2015. Although plaintiffs fail to specify in their complaint when the devices they alleged infringed on their patents were first made available for use, in their February 23, 2013 letter to President Obama, plaintiffs state that AT&T, Language Line, and CyraCom, "in direct and legal partnership" with the Federal Government, have been engaging in "**a willfully ignored global and domestic infringement on intellectual property!**" "**since 1995 to the present, 2013.**" If 1995 is the operative date of availability, 1995 falls far outside the six year statute of limitations. Further, any alleged infringement that may have continued to occur after 1995 "**to the present**" would not have served to alter or toll the accrual of plaintiffs' cause of action. See also Unitrac, LLC v. United States, 113 Fed. Cl. at 160 ("[O]ngoing infringement is irrelevant to this Court's jurisdiction in the context of the statute of limitations." (citing Bissell v. United States, 41 F. App'x 414, 416 (Fed. Cir. 2002))).

16

Similarly, the documents plaintiffs attach to their complaint specifically related to CyraCom and Language Line both show that any potential cause of action plaintiffs might have had would have accrued more than six years prior to the filing of their complaint. Two of the documents plaintiffs attach to their complaint regarding CyraCom, the undated press announcement and advertisement and the press release from September 26, 2007, both state that CyraCom had made a "dual-handset phone" publicly available in 1995. The 2007 press release states that, at that time, CyraCom had also made available a "dual-handset cordless phone." With regard to Language Line, the only reference to a potentially infringing product in plaintiffs' filings comes in the form of what appears to be the screenshot from Language Line's website announcing a "new telephone with dual handsets." The screenshot is dated October 26, 2009, over six years prior to the filing of plaintiffs' complaint in this court.[2] Therefore, the possible claims for patent infringement that plaintiffs included in their complaint, even when interpreted liberally, are barred by the statute of limitations under 28 USC § 2501.[3] With respect to any patent infringement claims alleged by plaintiffs, the government and CyraCom's motions to dismiss are granted.

Turning to plaintiffs' trademark infringement claims, plaintiffs fail to make, or provide any evidence that could be construed as making specific allegations that anyone infringed on their "The You Talk Two Phone" trademark other than the general statement in plaintiffs' February 23, 2013 letter to President Obama, that AT&T, Language Line,

---

[2] The documents plaintiffs attach to their complaint related to AT&T do not provide any evidence that AT&T ever made available a dual-handset phone or any other device that could potentially be construed as infringing on plaintiffs' alleged patents. At best, the March 25, 1999 New York Times article provided by plaintiffs could be interpreted as showing that AT&T was involved in some sort of partnership with Language Line which, potentially, could have involved Language Line's dual-handset phone. Although the court does not believe such an allegation is sufficient to state a claim upon which relief could be granted, the court need not even decide this issue because any possible claim arising out of any alleged actions by AT&T related to a partnership with Language Line would be barred by the statute of limitations for the same reasons as plaintiffs' claims arising from Language Line's actions are barred. Therefore, to the extent plaintiffs' complaint can be construed as alleging any claims arising out of the actions of AT&T, such claims are dismissed.

[3] Plaintiffs have failed to allege or proffer any evidence showing that the accrual of their patent infringement claims should be suspended on the grounds that "defendant has concealed its acts" or that "its injury was 'inherently unknowable' at the accrual date." See Martinez v. United States, 333 F.3d at 1319 (quoting Welcker v. United States, 752 F.2d at 1580). Such an argument also would fail in this case as there is evidence in the submissions to the court that plaintiffs actually were aware of the existence of the alleged infringement over six years prior to filing their complaint. Plaintiffs indicate in their motion for assignment of pro bono counsel that, in "the year **2008**," John Sacchetti "fell over in shock" after seeing two "***CYRACOM-BLUE,.DUAL-HANDSET[S]***" while in the hospital.

CyraCom, and the federal government engaged in "**a willfully ignored global and domestic infringement on intellectual property!**". Claims for trademark infringement are governed by the Lanham Act, 15 U.S.C. § 1051, et seq. (2012). Setting aside whether plaintiffs' trademark allegations are sufficiently detailed to state a claim upon which relief can be granted, which this court believes they are not, this court lacks jurisdiction to hear any claims brought under the Lanham Act, which jurisdiction lies exclusively in the United States District Courts. See 15 U.S.C. § 1121(a) (2012) ("The district and territorial courts of the United States shall have original jurisdiction and the courts of appeal of the United States (other than the United States Court of Appeals for the Federal Circuit) shall have appellate jurisdiction, of all actions arising under [the Lanham Act.]"); see also Lockridge v. United States, 218 Ct. Cl. 687, 689 (1978) ("We therefore conclude that we have no jurisdiction over claims for trademark infringement."); Proxtronics Dosimetry, LLC v. United States, No. 15-1589, 2016 WL 5757156, at *11 (Fed. Cl. Sept. 30, 2016) ("It is an unremarkable proposition that the Court of Federal Claims lacks jurisdiction over Lanham Act claims."). Therefore, with respect to any possible claims for trademark infringement that plaintiffs' complaint may be construed as alleging, the government and CyraCom's motions to dismiss are granted.

## CONCLUSION

Plaintiffs have failed to show that the requirements of RCFC 25(a) for the substitution of a proper party have been met. Plaintiffs' September 12, 2016 and October 3, 2016 "**MOTION[S] TO RETAIN THE ESTATE OF MARK JOSEPH SACCHETTI**," therefore, are **DENIED**. Plaintiffs' claims for patent infringement are barred by the statute of limitations, and this court lacks jurisdiction to hear plaintiffs' trademark infringement claims. The motions to dismiss filed by the United States and the third-party defendant CyraCom International, Inc., therefore, are **GRANTED**. Plaintiffs' complaint is **DISMISSED**. The clerk shall enter **JUDGMENT** consistent with this opinion.

IT IS SO ORDERED.

**MARIAN BLANK HORN**
Judge